**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

THEODORE SCOTT,

       **Plaintiff,**

v.                                                                        No. 1:24-cv-00710-JCH-JFR

ALBUQUERQUE POLICE OFFICER
GEORGE MARTINEZ (#7869), ALBUQUERQUE
POLICE SUPERVISORY TRAINING OFFICER
SERGEANT S. WEINSTEIN (#5660),
and THE CITY OF ALBUQUERQUE,

       **Defendants.**

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on the *Motion to Dismiss Plaintiff's First Amended Complaint on Qualified Immunity and Other Grounds* (Dkt. No. 27), filed by Defendant George Martinez and Defendant The City of Albuquerque (the "City") on April 25, 2025. Plaintiff Theodore Scott filed a response on May 9, 2025 (Dkt. No. 29), and Defendants Martinez and the City filed a reply on May 30, 2025 (Dkt. No. 32). On July 14, 2025, Defendant Sergeant S. Weinstein filed a Notice of Joinder (Dkt. No. 38) in the motion to dismiss, requesting the Court dismiss Plaintiff's First Amended Complaint with prejudice as to him too. Plaintiff filed a response to Defendant Weinstein's motion to dismiss (Dkt. No. 39), to which Defendant Weinstein filed a reply (Dkt. No. 40). The Court, having considered the motion, briefs in support and opposition, first amended complaint, arguments, and relevant law, concludes that the motion to dismiss should be granted.

## I.    FACTUAL BACKGROUND

The facts below come from Plaintiff's First Amended Complaint. Am. Compl., Dkt. No. 25. On the evening of September 29, 2023, Plaintiff Theodore Scott ("Plaintiff" or "Scott") visited a Walgreens in Albuquerque, New Mexico, near the intersection of Central Avenue and Girard. *See id.* ¶¶ 10-11. As Scott was exiting the Walgreens, he witnessed a homeless man, later identified as Sean Baify ("Baify"), carrying several bags and yelling at another man to fight him. *Id.* ¶¶ 11, 13. Scott witnessed the man Baify was yelling at run into the Walgreens to hide. *Id.* ¶ 12. Scott wanted to avoid interacting with Baify but was unable to run back into the Walgreens because he had previously sustained a knee injury that prevented him from running. *Id.* ¶ 13. Instead, he tried to avoid Baify by standing next to some bushes at the corner of Central Avenue and Dartmouth in the hopes that Baify would continue walking eastbound on Central Avenue and not notice him. *See id.* ¶ 14.

However, instead of continuing on Central Avenue, Baify turned onto Dartmouth and began verbally assaulting Scott, shouting racial slurs and taunting Scott to fight.[1] *Id.* ¶ 15. Scott, attempting to deescalate the situation, replied "I don't want to fight . . .  get away from me please." *Id.* ¶ 17. Baify continued following Scott and shouting racial slurs at him. *Id.* ¶¶ 17-18.

Scott attempted to walk away from Baify by crossing Central Avenue. *Id.* ¶ 20. But before Scott was able to safely cross Central Avenue, Baify reemerged from behind some parked vehicles. *Id.* ¶¶ 21-22. Scott noticed Baify drop several bags that he was carrying on the ground. *Id.* ¶ 22. Baify again challenged Scott to fight, and he refused. *Id.* ¶ 23. Baify, who was about seven feet away from Scott at the time, picked up one of the bags he had dropped on the ground, informed

---

[1] The verbal assault included statements like, "[y]ou want some too," "[y]ou fucking [n-word]," "[f]ight me [n-word], fight me," and "[y]ou pussy-ass [n-word]." *Id.* ¶ 15. Plaintiff is a Black man. *Id.* ¶ 7.

Scott that it was filled with rocks, and threatened to "smash [Scott's] head in" with the bag of rocks. *Id.* ¶¶ 23-24. Scott was unable to run away from Baify due to his knee injury. *Id.* ¶ 24. Baify continued to threaten Scott, saying "[y]ou are going to find out what it's like to die." *Id.*

Scott was carrying a concealed firearm at the time and continued to warn Baify not to approach him, loudly stating "[d]rop the bag," and "[d]on't come any closer with the bag or you will get shot," in front of approximately 50 witnesses. *Id.* ¶ 25. Baify ignored the warnings, raised the bag over his head, and ran towards Scott. *Id.* ¶¶ 26-27. Scott hastily discharged two rounds from his firearm at Baify, striking him twice. *Id.* ¶¶ 28-29. Despite being shot twice, Baify continued approaching Scott. *Id.* ¶ 29. Scott fired a third shot, hitting Baify and causing him to fall back onto the pavement. *Id.* ¶¶ 29-32. Baify attempted to stand up twice, but Scott yelled at him to stay down, or Scott would shoot him again. *Id.* ¶¶ 32-33. Scott called 911 to seek medical attention for Baify. *Id.* ¶ 34.

Albuquerque Police Department ("APD") officers, including Officer George Martinez and his supervisor and training officer, Sergeant Weinstein[2], arrived at the scene and interviewed four witnesses who described Baify's aggressive behavior and what they heard or saw at various points of the conflict between Scott and Baify. *See id.* ¶¶ 36-45, 47. Notably, witness Steven Estrada

---

[2] In the First Amended Complaint, Plaintiff acknowledges that he only saw the "W" on the name tag of the officer he is identifying in the amended complaint as "Sergeant S. Weinstein." *See* Am. Compl. ¶ 44, Dkt. No. 25. He says, if his identification is incorrect, he will amend his complaint after discovery is produced that identifies the correct "W" officer. *See id.* In his Notice of Joinder, Defendant Weinstein includes a footnote asserting that he does not waive any argument that he was not the training officer or supervisor of Officer Martinez. Notice 1-2 n.1, Dkt. No. 38. Defense counsel attached emails in which she informed Plaintiff's counsel multiple times, beginning on April 28, 2025, that Sergeant Weinstein is not the person referenced in the complaint and notified counsel who Officer Martinez's training officer was at the time. *Id.* & Ex. A, Dkt. No. 38-1. Defense counsel requests that Plaintiff withdraw or correct the allegations against Sergeant Weinstein, citing Federal Rule of Civil Procedure 11(b). Notice 1-2 n.1, Dkt. No. 38. These issues come before the Court on a motion to dismiss, not on a motion for summary judgment or on a motion for sanctions, so the Court will assume the allegations of the amended complaint are true for purposes of resolving this motion.

informed officers that he saw the conflict between Scott and Baify and that he saw Baify trying to attack Scott with a heavy blue bag before Scott shot him. *Id.* ¶ 39.

Baify and Scott were each transported to separate hospitals. *See id.* ¶¶ 41-42. While at the medical center and after receiving *Miranda* warnings, Scott was interviewed by APD Officer B. Thomas, Officer Martinez, and Sergeant Weinstein. *Id.* ¶¶ 43-45. After the interview, they led Scott out to their vehicle where they informed him that he was under arrest for a serious felony and would be charged with aggravated battery with a deadly weapon. *Id.* ¶ 48. While Officer Martinez was removing Scott's handcuffs to put on a different set, he kicked Scott's legs apart, called him the n-word, and told him to not tense up and to stop resisting. *Id.* ¶ 50. Scott tried to inform Officer Martinez of his prior knee injury and request that Officer Martinez not kick his legs because it was painful, but Officer Martinez told him to "stop tensing up [n-word]." *Id.* ¶ 51. Officer Martinez and Sergeant Weinstein subsequently transported Scott to the detention center. *Id.* ¶ 54.

At the detention center, Officer Martinez and Sergeant Weinstein handcuffed Scott to a bench for several hours while they prepared the criminal complaint for the District Attorney's Office and the Metropolitan Court. *Id.* Officer Martinez asked Sergeant Weinstein what events needed to be included in the report in light of Steven Estrada's witness statement. *Id.* ¶ 55. Sergeant Weinstein responded that they needed to include an admission by Scott that he shot Baify for the third time while Baify was on the ground for the District Attorney's Office to accept and proceed with the complaint. *Id.* ¶ 56. Scott objected, telling Sergeant Weinstein that what he and Officer Martinez were writing in the complaint was not what Scott or the witnesses had indicated in their statements, but Sergeant Weinstein just told him to "shut up." *Id.* ¶ 58.

Scott was eventually charged with Aggravated Battery (deadly weapon) in violation of N.M. Stat. Ann. § 30-03-05(C) and held in custody for six days. *Id.* ¶¶ 59, 63, 66. In the criminal

4

complaint prepared by Officer Martinez, he did not include the statements of witness Steven Estrada, even though Officer Martinez's police report listed Mr. Estrada as a witness. *See id.* ¶¶ 61-62. Sergeant Weinstein, as Officer Martinez's supervisor and trainer, directed Officer Martinez regarding what to include in the criminal complaint so that the District Attorney's Office would prosecute Plaintiff. *See id.* ¶¶ 119, 121.

The criminal complaint, however, did contain other information indicating a self-defense theory. *See* Criminal Compl., Dkt. No. 25 at 30 of 40.[3] Officer Martinez noted that Aarron Oneil said Baify was visibly upset and trying to fight four subjects; another witness heard Scott yelling "drop it, don't point it at me;" and a third witness said Scott yelled, "Get down, stay down, Cops on the way." *Id.* Officer Martinez further stated in the criminal complaint that Scott told him Baify was visibly aggressive towards him and threatened to kill him, and that Baify walked towards him swinging a blue bag over his head, saying the bag contained rocks to kill him. *Id.* The criminal complaint then said, "Theodore fired off two shots. Sean fell to the ground and where Theodore warned him to stay on the ground. Theodore stated again to stay on the ground where he fired off another round." *Id.* Officer Martinez noted that "all witnesses stated that they did not see Sean with anything in his hands" and the bags at the scene did not contain any rocks. *Id.* at 31 of 40.

Later, Officer Martinez was the only witness to testify before the grand jury and he falsely claimed that Scott admitted to shooting Baify a third time while Baify lay on the ground. Am. Comp. ¶ 67, Dkt. No. 25. He additionally mispresented to the grand jury that he was an experienced officer trained to investigate violent crimes. *Id.* Scott was indicted by the grand jury based solely on Officer Martinez's perjured testimony. *Id.* ¶ 68. He was held without bond. *Id.* At the time

---

[3] Plaintiff attached the criminal complaint to his amended complaint and relies upon it. The Court includes the contents of the criminal complaint not for the truth of the matters asserted therein, but to show the context of what Officer Martinez included in the criminal complaint.

Officer Martinez testified, Sergeant Weinstein was his supervisor. *Id.* ¶ 119. After further investigation of the case, the District Attorney's Office filed a nolle prosequi on the indictment issued against Scott. *Id.* ¶ 70.

## II.     PROCEDURAL HISTORY

Plaintiff filed his civil complaint against Officer Martinez, APD Officer Max Denerstein, and the City of Albuquerque in the New Mexico Second Judicial District Court, and Defendants removed it to this Court. Notice of Removal 1, Dkt. No. 1. The City filed an Answer (Dkt. No. 8). Officer Martinez filed a motion for a more definite statement (Dkt. No. 10), which this Court granted. Mem. Opinion and Order, Dkt. No. 20. Thereafter, Plaintiff filed an amended complaint on April 8, 2025, naming Officer Martinez, Albuquerque Police Supervisory Training Officer Sergeant S. Weinstein (#5660), and the City as defendants. *See* Am. Compl. 1, 21-27, Dkt. No. 25.

Plaintiff's amended complaint states two causes of actions against Officer Martinez and Sergeant Weinstein and one against the City. As for the claims against the officers, Plaintiff first asserts that Officer Martinez and Sergeant Weinstein violated his Fourth Amendment rights when they arrested him, confined him, and prosecuted him without probable cause and when they conspired to file a false criminal complaint and to offer perjured testimony. Am. Compl. ¶¶ 111-23, Dkt. No. 25. Plaintiff claims that the officers did not have probable cause to arrest him because he was acting in self-defense when he shot Baify. *Id.* ¶ 118. He further contends that Officer Martinez and Sergeant Weinstein knowingly and with reckless disregard for the truth made materially false statements in the criminal complaint and to the grand jury. *Id.* In Count II, Plaintiff asserts that Officer Martinez and Sergeant Weinstein conspired to deprive him of his liberty interest without due process of law in violation of the Fourteenth Amendment, his right under the Fourth Amendment to be free from unreasonable seizure (arrest), excessive force, and illegal search, and

his right under the Sixth Amendment to a fair legal proceeding. *Id.* ¶¶ 124-34. The conspiracy claim for false arrest, false imprisonment, and malicious prosecution is based on Sergeant Weinstein deciding with Officer Martinez that Officer Martinez would include an allegedly false admission from Plaintiff that he shot Baify for a third time while Baify was on the ground in the criminal complaint, and that Officer Martinez would testify to that effect to the grand jury. *Id.* ¶¶ 128-31.

Finally, Plaintiff asserts that the City failed to monitor, supervise, and train its officers in violation of his Fourth, Sixth, and Fourteenth Amendment rights. *Id.* ¶¶ 135-40. Plaintiff alleges that the City's failure to monitor, supervise, and train its supervisory training officers "amounted to deliberate indifference to the rights of persons with whom the police" encounter during their investigations. *Id.* ¶ 139. He also contends that the City ratified Officer Martinez's conduct because Sergeant Weinstein was APD's final decisionmaker on the issues and he directed and allowed the submission of false statements. *Id.* ¶ 138.

Officer Martinez and the City filed a motion to dismiss (Dkt. No. 27), asserting qualified immunity. They also filed a motion to stay discovery (Dkt. No. 28) until the questions of qualified immunity are decided. The Court granted the request to stay discovery. Order, Dkt. No. 30. Plaintiff filed a response (Dkt. No. 29), opposing the motion to dismiss. Of note, in his response, Plaintiff stated that Officer Martinez referred to him as an n-word and that at the detention center Sergeant Weinstein told him to "shut up." Pl.'s Resp. 5, Dkt. No. 29.

Defendants Martinez and the City filed a reply (Dkt. No. 32). At the end of their reply, Defendants asserted that Plaintiff's allegations regarding Officer Martinez using the n-word and Sergeant Weinstein telling Plaintiff to shut up were without a good faith basis. Def.'s Reply 10-11, Dkt. No. 32. According to defense counsel, she and her staff watched the lapel camera video from

the incident and at no time were those statements or interactions located. Defs.' Reply 10-11, Dkt. No. 32. Defendants, relying on Rule 11, request that Plaintiff withdraw or correct the allegations. *Id.* Defendants filed a notice of completion of briefing (Dkt. No. 33).

Plaintiff, after several attempts, served Defendant Weinstein. *See* Summons, Dkt. Nos. 34-37. Defendant Weinstein thereafter filed a notice of joinder in the motion to dismiss (Dkt. No. 38). Defense counsel also attached to the notice the emails in which defense counsel notified Plaintiff's counsel that Plaintiff named the wrong defendant. *See* Notice, Dkt. No. 38, & Ex. A, Dkt. No. 38-1. In the Notice, Defendant asks that Plaintiff withdraw or correct the allegations against him. Notice 1-2 n.1, Dkt. No. 38.

Plaintiff filed a response to the notice (Dkt. No. 39). In addition to addressing the merits of his claims, Plaintiff objects to the Notice going beyond the pleadings and citing exhibits, particularly when discovery has been stayed. Pl.'s Resp. 3-4, Dkt. No. 39. Plaintiff also addressed the Rule 11 argument, standing by his allegations. *See id.* Plaintiff asserted:

> Notwithstanding the fact the defendants have not tendered any discovery to the plaintiff it is assumed that from the very start defendants Martinez and Weinstein have been involved in a spoliation of evidence regarding the "recordings" and the "video" that defendant Weinstein indicates he has but which have not been produced. It is assume[d] that video and audio evidence has either been destroyed or edited by Weinstein.

*Id.* at 4-5. Although Plaintiff cited the law for spoliation sanctions, he did not expressly request sanctions. *See id.* at 5. Plaintiff argued that Defendant Weinstein could have lodged the video to support the contention that Plaintiff is lying, but instead, they "call[ed] plaintiff and plaintiff's counsel names" without evidentiary support. *Id.* at 6. Plaintiff requests that the Court strike the arguments about evidence outside the four corners of the complaint and notes that counsel is inappropriately vouching for her client. *See id.* at 22.

In reply, Defendant Weinstein argues, among other things, that Plaintiff had no good faith basis for an accusation of spoliation of evidence. Reply 7, Dkt. No. 40. Defendant Weinstein also contends that the motion to dismiss is based on the insufficiency of the allegations of the amended complaint, and it is unnecessary for the Court to consider any evidence in ruling on the motion. *Id.* at 7-8.

The Court will confine its analysis of the motion to dismiss to the facts alleged in the amended complaint. Because the Court will not consider any outside evidence, it need not strike the arguments regarding the evidence. Any issues concerning Rule 11 or spoliation are best addressed and considered in a separate motion. The Court will not address them here, and instead, now turns to the merits of the motion to dismiss.

## III.    STANDARD OF REVIEW

For a party to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient to state a claim for relief. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must allege either direct or inferential allegations on all the material elements of a claim and provide enough factual allegations for a court to infer the claim is plausible. *See Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). Conclusory allegations without supporting factual allegations are insufficient to state a claim. *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). A plaintiff need only allege enough facts to make his claim plausible on its face and provide fair notice to the defendant. *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013).

## IV.    DISCUSSION

9

Plaintiff's constitutional claims are asserted pursuant to 42 U.S.C. § 1983, the "remedial vehicle for raising claims based on the violation of [federal] constitutional rights." *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016). Section 1983 provides that any person who, under color of law, subjects another person to a deprivation of federal or constitutional rights "shall be liable to the party injured in an action at law...." 42 U.S.C. § 1983. Because the common law at the time of the statute's enactment recognized certain immunities for government officials, the Supreme Court recognizes similar immunities under § 1983, one of which is qualified immunity. *See Filarsky v. Delia*, 566 U.S. 377, 383-90 (2012). Qualified immunity shields government officials performing discretionary functions from liability for civil damages so long as their conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

To defeat a qualified immunity defense at the motion to dismiss stage, a plaintiff must "allege facts sufficient to show (assuming they are true) that the (1) defendant[ ] plausibly violated their constitutional rights, and that (2) those rights were clearly established at the time." *Brown v. City of Tulsa*, 124 F. 4th 1251, 1265 (10th Cir. 2025) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008)). A court may exercise its discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first based on the circumstances of the case before it. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "[I]f the plaintiff fails to establish either prong of the two-pronged qualified immunity standard, the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016). For a right to be clearly established under the second prong, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Albright v.*

10

*Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A plaintiff can demonstrate that a constitutional right is clearly established by references to on-point cases from the Supreme Court, the Tenth Circuit, or the clearly established weight of authority from other circuits. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008).

### A. Claims against Max Denerstein

Although Max Denerstein was named in the original complaint, Plaintiff removed him entirely from the amended complaint. *Compare* Compl., Dkt. No. 1-1; *with* Am. Compl, Dkt. No. 25. The Court construes the amended complaint as a voluntary dismissal of Plaintiff's claims against Max Denerstein. Where, as here, an opposing party has filed an answer, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). A dismissal under Rule 41(a)(2) "is without prejudice." *Id.* Accordingly, the Court will dismiss without prejudice the claims against Defendant Max Denerstein.

### B. Count I: Claim for Violations of the Fourth Amendment Under 42 U.S.C. § 1983 Against Officer Martinez and Sergeant Weinstein

#### 1. False arrest claim

The warrantless arrest of a person in a public place based on probable cause does not violate the Fourth Amendment. *United States v. Santana*, 427 U.S. 38, 42 (1976) (citing *United States v. Watson*, 423 U.S. 411, 414-15 (1976)); *United States v. Davis*, 94 F.3d 1465, 1468 (10th Cir. 1996). Probable cause to support a warrantless arrest exists when the facts and circumstances within an officer's knowledge are sufficient to warrant a reasonable person to believe that the suspect had committed or was committing an offense. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964). "[T]he probable cause inquiry is not restricted to a particular offense, but rather requires merely that officers had reason to believe that a crime—any crime—occurred." *United States v. Turner*, 553 F.3d 1337, 1345 (10th Cir. 2009). "[I]n determining whether probable cause exists, the courts must

apply the totality of circumstances test." *Brierley v. Schoenfeld*, 781 F.2d 838, 841 n.1 (10th Cir. 1986). A court examines the "events leading up to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1220 (10th Cir. 2020). Probable cause is not a high bar. *Id.* (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). Probable cause is a substantial probability the suspect committed a crime, "requiring something more than a bare suspicion." *Bledsoe v. Carreno*, 53 F.4th 589, 614 (10th Cir. 2022) (internal quotations omitted). Nevertheless, the standard "requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest." *Maresca v. Bernalillo County*, 804 F.3d 1301, 1310 (10th Cir. 2015) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1117 (10th Cir. 2007)).

Observation of the facts in this case from the viewpoint of an objectively reasonable officer leads this Court to find that Officer Martinez and Sergeant Weinstein had probable cause to arrest Plaintiff. Plaintiff admitted to shooting Baify three times. Am. Compl. ¶¶ 28-30, Dkt. No. 25. When Officer Martinez and Sergeant Weinstein arrived at the scene and interviewed witnesses, they were informed of the following. *Id.* ¶¶ 36-40. One witness recounted seeing Baify "visibly agitated" and trying to fight other people. *Id.* ¶ 37. Another witness heard Plaintiff yelling "drop it, don't point it at me," *id.* ¶ 38, while yet another witness heard the gunfire and saw Scott pointing a gun at Baify on the ground and yelling, "Get down, stay down, cops on the way," *id.* ¶ 40. Witness Steven Estrada reported watching Baify aggressively approach Plaintiff with a heavy blue bag, and then seeing Plaintiff shoot Baify. *Id.* ¶ 39.

New Mexico law states: "Whoever commits aggravated battery inflicting great bodily harm or does so with a deadly weapon or does so in any manner whereby great bodily harm or death can be inflicted is guilty of a third degree felony." N.M. Stat. Ann. 1978, § 30-3-5(C). The statute defines aggravated battery as "the unlawful touching or application of force to the person of another with intent to injure that person or another." *Id.* § 30-3-5(A). Here, Officer Martinez and Sergeant Weinstein arrived at the scene and learned that Plaintiff had shot Baify three times, inflicting great bodily harm on him with a deadly weapon. Probable cause is not a high bar, *Hinkle*, 962 F.3d at 1220, and from the viewpoint of an objectively reasonable officer at the scene, the evidence was sufficient to believe that Plaintiff had violated New Mexico law by shooting Baify three times during an altercation. Based on Plaintiff's admission to shooting Baify and the witnesses' recounting of events, Officer Martinez and Sergeant Weinstein had probable cause to arrest Plaintiff.

Plaintiff argues that Officer Martinez and Sergeant Weinstein did not have probable cause to arrest him because (1) Plaintiff acted in self-defense when he shot Baify, (2) Officer Martinez knew this fact and ignored it, and (3) Officer Martinez lied about Plaintiff shooting Baify for a third time while Baify was on the ground so that the criminal complaint would be accepted and prosecuted by the District Attorney's Office. Am. Compl. ¶¶ 118-19, Dkt. No. 25. Plaintiff encourages the Court to consider these facts as decisively showing Officer Martinez and Sergeant Weinstein did not have probable cause. *See* Resp. 8, 15, Dkt. No. 29. In support, Plaintiff cites the New Mexico statute stating that homicide is justifiable "when committed in the lawful defense of himself or of another and when there is a reasonable ground to believe a design exists to commit a felony or to do some great personal injury against such person or another, and there is imminent danger that the design will be accomplished." N.M. Stat. Ann. § 30-2-7(B).

13

Courts must view the circumstances in their totality rather than individually when assessing probable cause. *United States v. Valenzuela*, 365 F.3d 892, 897 (10th Cir. 2004). While the officers had some evidence based on their interview of Plaintiff that he was motivated by self-defense when he shot Baify, officers need not "rule out a suspect's innocent explanation for suspicious facts." *District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018). Even if an objectively reasonable officer could have suspected that Plaintiff was acting in self-defense, the officer does not have to consider this claim when deciding whether he has probable cause to make an arrest. *Craft v. White*, 840 F. App'x 372, 378 (10th Cir. Jan. 14, 2021) (unpublished) (finding that probable cause existed even if some evidence suggested self-defense); *Sanchez v. Labate*, 564 F. App'x 371, 374 (10th Cir. 2014) (unpublished) (noting that New Mexico law does not require officers to consider a claim of self-defense in determining whether they have probable cause to arrest); *Kapinski v. City of Albuquerque*, No. 18-cv-716 SCY/GJF, 2019 WL 2602551, at *10-11 (D.N.M. June 24, 2019) (noting that officers had no duty to consider a claim of self-defense in deciding whether they had probable cause to arrest plaintiff). Further, while witnesses saw and heard Baify acting aggressively towards Plaintiff, no witness other than Plaintiff informed officers that Baify claimed his bag was filled with rocks. Am. Compl. ¶¶ 36-40, Dkt. No. 25. An objectively reasonable officer with this information could conclude that responding to the threat of a heavy bag with gunfire was an unreasonable and disproportionate response. Accordingly, that Plaintiff claimed he was acting in self-defense is not determinative in the probable cause analysis.

The timing of Plaintiff's third shot at Baify is also irrelevant to the probable cause analysis as to the false arrest claim. Plaintiff focuses much argument on his allegation that Officer Martinez lied in the criminal complaint and to the grand jury by misrepresenting the situation around the third shot by claiming that Plaintiff shot Baify while Baify was on the ground, instead of the third

14

shot occurring while Baify was still standing and approaching Plaintiff. *See* Resp. 8-9, 12, Dkt. No. 29. Plaintiff cites to *Montoya v. City & Cnty. of Denver* for the proposition that a Fourth Amendment violation occurs if an officer's affidavit supporting an arrest warrant contains a reckless false statement or omission that was material to the issuance of the arrest warrant. No. 21-1107, 2022 WL 1837828, at *4 (10th Cir. June 3, 2022). However, here, the filing of the criminal complaint and testimony before the grand jury occurred after Defendants' arrest – his arrest was a warrantless arrest based on probable cause. Probable cause supported his arrest based on the information the officers had regarding the first two shots, regardless of the circumstances of the third shot.

Similarly, the omission of witness Estrada's account from the criminal complaint is irrelevant to the probable cause analysis because probable cause was established with or without his account. Even considering that Estrada recalled that there had been an altercation and Baify seemed to be the aggressor, the level of force Plaintiff used and the lack of an obvious weapon on Baify are sufficient to lead a reasonable person to believe that Plaintiff had committed a crime. Accordingly, these facts do not detract from a finding that the totality of the circumstances supported probable cause to arrest Plaintiff and that his Fourth Amendment right to be free from unlawful arrest was not violated. The Court finds that Officer Martinez and Sergeant Weinstein are entitled to qualified immunity on Plaintiff's § 1983 Fourth Amendment false arrest claim and will dismiss the claim against them.

### 2.  Malicious prosecution claim

Next, the Court turns to Plaintiff's Fourth Amendment claim for malicious prosecution. A successful Section 1983 claim for malicious prosecution requires five elements, with this analysis hinging on the third: "(1) the defendant caused the plaintiff's continued confinement or

prosecution; (2) the original action terminated in favor of the plaintiff; (3) *no probable cause supported the arrest, confinement, or prosecution*; (4) the defendant acted maliciously; and (5) the plaintiff sustained damages." *Shrum v. Cooke*, 60 F.4th 1304, 1310 (10th Cir. 2023) (emphasis added) (citing *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008)). Plaintiff contends that Officer Martinez, aided and encouraged by Sergeant Weinstein, falsely stated in the criminal complaint and falsely testified before the grand jury that Plaintiff shot Baify while Baify was on the ground. Plaintiff additionally asserts that Officer Martinez falsely testified he was an experienced officer trained to investigate violent crimes and omitted the eyewitness account of witness Estrada who saw Baify threatening Plaintiff. For their part, Defendants argue that the presence of probable cause defeats the malicious prosecution claim.

According to Plaintiff, Defendant Martinez falsely stated in the criminal complaint that all witnesses said Baify had nothing in his hands, when Detective Martinez knew that witness Estrada said that Baify tried to attack Scott with a heavy blue bag before Scott shot him. Plaintiff also asserts Defendants falsely put in the complaint and falsely stated before the grand jury that Scott fired a third round at Baify while he lay on the ground. According to Plaintiff, the law is clearly established that an officer who manufactures evidence that is false to prosecute a plaintiff violates the plaintiff's rights and states a malicious prosecution claim.

Officers are liable under § 1983 and § 1985(2) "when they conspire to procure groundless state indictments and charges based upon fabricated evidence or false, distorted, perjurious testimony presented to official bodies in order to maliciously bring about a citizen's trial or conviction." *Anthony v. Baker*, 767 F.2d 657, 662 (10th Cir. 1985). An officer who purposefully conceals and misrepresents material facts to a prosecutor to influence his decision to prosecute may be liable for malicious prosecution. *Robinson v. Maruffi*, 895 F.2d 649, 655 (10th Cir. 1990).

16

As the Tenth Circuit has explained, an official "who prevaricates and distorts evidence to convince prosecuting authorities to press charges is no less reprehensible than an officer who, through false statements, prevails upon a magistrate to issue a warrant." *Pierce v. Gilchrist*, 359 F.3d 1279, 1293 (10th Cir. 2004).

Nevertheless, to succeed on a malicious prosecution claim, the plaintiff must show an absence of probable cause to support the arrest, confinement, or continued prosecution. *See id.* at 1294-95. In *Franks v. Delaware*, "the Supreme Court held that affiants seeking arrest warrants violate the constitution when they knowingly, or with reckless disregard for the truth, include false statements in a supporting affidavit or omit information which, if included, would prevent the warrant from lawfully issuing." *Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). For omissions, the plaintiff must show the omitted information was "material" in that its inclusion would have negated probable cause. *See id.* Consequently, in a Fourth Amendment claim based on falsified evidence, "probable cause is determined by setting aside the false information and reviewing the remaining contents" of the affidavit. *See id.* For a case based on withholding exculpatory evidence, probable cause is determined by looking at the totality of the evidence, including the omitted information. *Id.* "The probable cause requirement is central to the common law tort, because not every arrest, prosecution, confinement, or conviction that turns out to have involved an innocent person should be actionable." *Pierce*, 359 F.3d at 1294. In the context of a qualified immunity defense, the court examines the evidence without the falsified inculpatory evidence and with the withheld exculpatory evidence and then asks whether there was arguable probable cause – whether there is an objectively reasonable, even if mistaken, belief that probable cause exists. *Bledsoe*, 53 F.4th at 614-15.

The *Kapinski* case is informative. There, the plaintiff, after shooting and killing two men, was arrested for the murder based on an affidavit that failed to mention the detective had video surveillance footage of the shooting that showed the plaintiff being punched and hit repeatedly, without provocation, before he shot both men. *See Kapinski*, 964 F.3d at 901-03. The affidavit also included certain information consistent with the plaintiff acting in self-defense, such as an eyewitness seeing one of the decedents punch the plaintiff. *Id.* at 903-04. After the jury found him not guilty based on self-defense, the plaintiff sued the detective for false arrest and malicious prosecution. *Id.* at 904. The Tenth Circuit concluded that, although a jury could reasonably conclude the plaintiff acted in self-defense, the evidence also established probable cause, because there was a substantial probability that when the plaintiff shot one of the decedents, there was no appearance of immediate danger or death or great bodily harm to the plaintiff. *Id.* at 907. Notably, the Tenth Circuit cited N.M.U.J.I. 14-131, which defined "great bodily harm" as an injury to a person creating a high probability of death or resulting in serious disfigurement or resulting in loss of any member or organ of the body or results in permanent or prolonged impairment of the use of any member or organ of the bodily. *Id.* & n.4. Consequently, the Tenth Circuit determined that the amended warrant supported probable cause, rendering the omitted video footage immaterial. *Id.* at 908.

Here, the critical question is whether there was probable cause to support the indictment and continued prosecution of Plaintiff had the grand jury or prosecutors had before them the fact that Estrada saw Baify trying to attack Plaintiff with a heavy blue bag before Plaintiff shot him, and setting aside the allegedly false facts that Plaintiff shot Baify the third time while Baify was on the ground and, in the case of the grand jury, that Officer Martinez was an experienced officer trained to investigate violent crimes. As explained *supra*, there was probable cause that Plaintiff

18

committed the crime based on the first two shots he fired, so testimony concerning the third shot was extraneous. As for Estrada's observation, it did not negate that Plaintiff shot Baify three times. Nor is it definitive evidence that Plaintiff responded reasonably to an immediate danger where he shot Baify three times when he approached with a heavy bag. There is a substantial probability that, at the time Scott shot Baify, the heavy bag did not create the appearance of immediate danger of death or great bodily harm, as defined in N.M.U.J.I. 14-131. Thus, probable cause existed even if some evidence suggested self-defense. *Cf. Craft*, 840 F. App'x at 378 ("New Mexico law recognizes self-defense only when the conduct involves a reasonable, necessary response to an 'immediate danger,' NMRA, Crim. UJI 14-5182, and the video does not definitively show whether Mr. Craft responded reasonably to an immediate danger. We thus conclude that Mr. Craft's claim of malicious prosecution fails based on the existence of probable cause.").[4] Accordingly, even when considering the facts of the criminal complaint by removing the alleged falsity and including the omitted information, the facts do not vitiate probable cause. *Cf. Kapinski*, 964 F.3d at 907 ("Although a jury could, reasonably, conclude that Kapinski was acting in self-defense, we find the evidence also establishes probable cause. That is, there is a substantial probability that, at the

---

[4] That probable cause exists despite a colorable self-defense claim distinguishes this case from the cases upon which Plaintiff relies. *See*, *e.g.*, *Montoya v. City and County of Denver*, No. 21-1107, 2022 WL 1837828, at *3-7 (10th Cir. June 3, 2022) (discussing how, without false statements, there were no facts in affidavit that placed plaintiff at crime scene or implicated him in the crime); *Maresca*, 804 F.3d at 1311 (determining officer lacked probable cause to arrest driver with his wife and three kids where sole basis was officer's mistaken and unreasonable belief that truck was stolen because she mistyped license plate number into her computer and then failed to use readily available information from computer screen in front of her and from dispatch to verify report); *Wilkins*, 528 F.3d at 801-02 (concluding there was absence of probable cause when excluding allegedly false coerced statements from warrant because that was only evidence implicating plaintiffs in murders); *Robinson v. Maruffi*, 895 F.2d 649, 651-53, 655, 657 (10th Cir. 1990) (Tenth Circuit rejected officers' argument that causal connection between their purposeful concealment and misrepresentation of material facts to district attorney and plaintiff's injuries were broken by subsequent, independent and intervening acts of the prosecutor, grand jury, state trial court and the New Mexico Supreme Court; case did not involve self-defense claim); *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988) (explaining that officers lacked probable cause to believe plaintiff committed crime based only on facts showing victim with severe head injury momentarily identified plaintiff equivocally and immediately withdrew identification, rendering it worthless); *Clipper v. Takoma Park, Md.*, 876 F.2d 17, 19-20 (4th Cir. 1989) (concluding officers did not have probable cause to arrest plaintiff based on lack of evidence identifying him as bank robber).

time Kapinski shot Francia, there was no 'appearance of immediate danger of death or great bodily harm' to Kapinski.").

Plaintiff nevertheless alleges that the officers knew they needed additional facts to negate a self-defense theory for the prosecutors to move forward with the case. The Court will assume for purposes of this discussion that the factual allegations in the complaint are sufficient to support an inference that the district attorney's office had such a policy. The question is then whether, despite the presence of probable cause to support the arrest and continued prosecution of Scott, the officers can be liable for the false statements designed to meet a heightened policy standard. None of the cases Plaintiff cited are on point and in support of his position. While such a scenario would be troubling, the Court remains unconvinced that a malicious prosecution claim based on the Fourth Amendment can move forward where the undisputed facts show probable cause to support a prosecution. Officer Martinez and Sergeant Weinstein are entitled to qualified immunity on this claim because no constitutional violation has been shown. *Cf. Grubbs v. Bailes*, 445 F.3d 1275, 1278 (10th Cir. 2006) ("If hypothetically correcting the misrepresentation or omission would not alter the determination of probable cause, the misconduct was not of constitutional significance and is not actionable under § 1983…."). Plaintiff's claims against Officer Martinez and Sergeant Weinstein will be dismissed.[5]

---

[5] Plaintiff brings a claim for malicious prosecution under the Fourteenth Amendment in Count II, premised on a violation of his due process rights but based on the same factual allegations as his claim under the Fourth Amendment. Am. Compl. ¶¶ 124-134, Dkt. No. 25. He maintains in his response that this claim survives even if the claim under the Fourth Amendment fails. Resp. 11, Dkt. No. 29. It appears Plaintiff bases this on since-overruled reasoning that if an individual has been imprisoned pursuant to legal but wrongful process, they have a claim under the procedural component of the Fourteenth Amendment's Due Process Clause analogous to a tort claim for malicious prosecution. *Pierce v. Gilchrist*, 359 F.3d 1279, 1285-86 (10th Cir. 2004); *Mondragon v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008). However, the Supreme Court clarified that "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process," meaning that the initiation of the legal process does not extinguish a plaintiff's

**C. Count II: Claim for Violations of the Fourth, Sixth, and Fourteenth Amendments under 42 U.S.C. § 1985 Against Officer Martinez and Sergeant Weinstein**

Section 1985(3) provides a right of action where a conspiracy to interfere with a constitutionally or federally protected right is motivated by racial or otherwise class-based invidiously discriminatory animus. *See Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971); 42 U.S.C. § 1985(3). A claim arises under this section of the statute where two or more persons conspire for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. *See* 42 U.S.C. § 1985(3). "Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979); *Gallegos v. City & Cnty. of Denver*, 984 F.2d 358, 362 (10th Cir. 1993) (citing *Dixon v. City of Lawton*, 898 F.2d 1443, 1448 (10th Cir. 1990)).

To state a claim under § 1985(3), a plaintiff must show the following: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of laws, or of equal privileges and immunities under the law; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Griffin*, 403 U.S. at 102-03; *Tilton v. Richardson,* 6 F.3d 683, 686 (10th Cir. 1993). In addition, the statute has been interpreted to require "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Griffin*, 403 U.S. at 102. "The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Id.*

---

Fourth Amendment unreasonable detention claim. *Manuel v. City of Joliet, III*, 580 U.S. 357, 369 (2017). So even though Plaintiff challenges his confinement after the institution of legal process, it is still a Fourth Amendment claim. Accordingly, Plaintiff's Fourteenth Amendment claim for malicious prosecution against Officer Martinez will be dismissed.

Plaintiff claims that Officer Martinez and Sergeant Weinstein conspired to deprive him of his civil rights by plotting to falsely arrest, imprison, and maliciously prosecute Plaintiff, in violation of his Fourth Amendment rights, and to deprive him of the right to a fair legal proceeding in violation of his Sixth Amendment rights. However, because this Court found that Officer Martinez and Sergeant Weinstein had probable cause to arrest Plaintiff, the false arrest, imprisonment, and malicious prosecution claims brought pursuant to § 1985 cannot be sustained as Plaintiff cannot show he was deprived of his Fourth Amendment rights. Officer Martinez and Sergeant Weinstein are entitled to qualified immunity on this claim and the claims will be dismissed against them.[6]

Further, Plaintiff does not expand upon his Sixth Amendment claim beyond stating that "[t]he conspiracy entered by the defendant officers was for the deprivation of Scott's . . . right to a fair legal proceeding under the Sixth Amendment." Am. Compl. ¶ 126. Nor does he flesh out this claim in his response. "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Accordingly, because Plaintiff has not provided a factual basis for any Sixth Amendment claim, Plaintiff's claims against Officer Martinez and Sergeant Weinstein for conspiracy to violate his Sixth Amendment rights will also be dismissed.

### D. Count III: Claim for Violations of the Fourth, Sixth, and Fourteenth Amendments under § 1983 and § 1985 Against the City of Albuquerque

There is no *respondeat superior* liability under § 1983. *Est. of Beauford v. Mesa Cnty., Colo.*, 35 F.4th 1248, 1274-75 (10th Cir. 2022); *Schneider v. City of Grand Junction Police Dep't*,

---

[6] In his conspiracy count, Plaintiff in paragraph 126 of his amended complaint references "excessive force" among other deprivations. *See* Am. Compl. ¶ 126, Dkt. No. 25. Plaintiff, however, has not provided any argument or authority in support of an excessive force claim. To the extent he attempted to bring claim for conspiracy to use excessive force, the Court dismisses the claim based on Plaintiff's failure to meet his burden on qualified immunity.

717 F.3d 760, 767 (10th Cir. 2013). A local government body may be held liable "only for its own unconstitutional or illegal policies and not for the tortious acts of its employees." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). To establish a claim under § 1983 against a local government body for the acts of employees, a plaintiff must prove: (1) that an employee committed a constitutional violation, and (2) that a policy or custom of the government body was the "moving force" behind the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs,* 962 F.3d 1204, 1239 (10th Cir. 2020). The "policy or custom" requirement may be shown by: (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused. *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010); *see Monell*, 436 U.S. at 694; *Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986).

To establish that a challenged policy or custom was the "moving force" behind the constitutional violation, the plaintiff must show that it was "closely related to the violation of the plaintiff's federally protected right." *Schneider*, 717 F.3d at 770. It is not sufficient for a plaintiff to allege that she was harmed and that the harm could have been prevented if the governmental entity did something different in the way of training or supervision. *Connick v. Thompson*, 563 U.S. 51, 68 (2011). Nor is it sufficient to allege "general deficiencies" in training or supervision;

instead, the plaintiff must "'identify a specific deficiency' that was obvious and 'closely related' to" the injury. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (quoting *Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999)); *see Schneider*, 717 F.3d at 769. In addition, the plaintiff must show that an alleged failure to train or supervise amounted to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Thompson*, 563 U.S. at 61 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Here, Plaintiff argues that the City of Albuquerque has a "municipal policy or custom of unconstitutional training and supervision" of APD supervisor training officers who fail to train new APD officers to investigate crimes or felonies. Am. Compl. ¶ 136. Plaintiff claims this policy allows supervisor training officers to forego proper training and enter conspiracies with other APD officers under their supervision to violate citizens' rights. *Id.* According to Plaintiff, this resulted in Sergeant Weinstein directing Officer Martinez to submit a criminal complaint that contained false statements to the Metropolitan Court and to testify falsely before the grand jury. *Id.* ¶ 138.

However, it is well established that a government body cannot be held liable under § 1983 for the acts of an employee if the employee did not commit a constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998); *see Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers."). A determination that an employee is entitled to qualified immunity, however, does not necessarily preclude municipal liability; an individual officer—but not a municipality—is entitled to qualified immunity even if the officer committed a constitutional violation but the law was not clearly established. *Myers*, 151 F.3d at 1317. However, Officer Martinez was entitled to qualified immunity because he *did not* commit constitutional

24

violations in this case. *See supra* Sections III.A, III.B; *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1226 (10th Cir. 2020) ("[Plaintiff's] *Monell* claim [fails] because he was arrested with probable cause."). This finding did not rest on a determination that the law was not clearly established. *See supra* Sections III.A, III.B. Accordingly, this finding forecloses Plaintiff's Fourth, Sixth, and Fourteenth Amendment claims against the City of Albuquerque, and these claims will be dismissed.

## V.    CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants Officer Martinez, Sergeant Weinstein, and the City of Albuquerque's *Motion to Dismiss Plaintiff's First Amended Complaint on Qualified Immunity and Other Grounds* **(ECF No. 27)** is **GRANTED**. Plaintiff's claims against Officer Martinez, Sergeant Weinstein, and the City of Albuquerque are **DISMISSED WITH PREJUDICE**. Further, all claims against Defendant Max Denerstein are **DISMISSED WITHOUT PREJUDICE**.

_____
SENIOR UNITED STATES DISTRICT JUDGE